CHARLES O. EMERSON *vs.* PELATIAH HARMON & *al.*

Where a general partnership exists, and a note is indorsed in the name of the firm, by one partner, and is sold in the market, and the money received by him, all the partners are liable as indorsers to a *bona fide* holder.

And if such partner, without the knowledge of the holder of the note, convert the money to his individual use, still all the partners are liable.

Declarations in his own favor, made by the indorser of a note, at the time when notice of its dishonor was given to him, but when the holder of the note was not present, and having no relation to such notice, are not admissible in evidence.

EXCEPTIONS from the Court of Common Pleas, *Whitman C. J.* presiding.

*Assumpsit* against the defendants, as indorsers of a promissory note, made by *Hanson & Hale* to *Pelatiah Harmon*, one of the defendants, or his order, dated *Nov.* 27, 1835, and payable in four months and grace. On the back thereof was indorsed, in the handwriting of *Harmon, P. Harmon, Harmon & Silsby*, in blank. *Harmon* was defaulted, and the defence made by *Silsby*. Due demand and notice were proved by a witness, of whom the counsel for *Silsby* proposed to inquire, what declarations were made by *Silsby* at the time the notice was given to him as indorser. Objection was made, and the Judge ruled, that, as the plaintiff was not present, that the declarations were not admissible. The plaintiff proved a publication of partnership between the two defendants, " under the firm of *Harmon & Silsby*," published by their order, on the 24th of *Dec.* 1835, and a notice similarly published on the 15th of *April*, 1836, of the dissolution of the partnership by mutual consent, and a direction to all indebted to the firm to make

payment to *Harmon*, who was authorised to settle the partnership concerns. The plaintiff then proved, by a broker in *Portland*, where the defendants lived, that *Harmon*, after the copartnership was formed, brought the note to him and wished to raise money on it; that the witness suggested, that there was more strength wanted on the note, and that if the firm of *Harmon & Silsby* was indorsed upon it, he thought he could get the money, and that *Harmon* thereupon, in presence of the witness, wrote the name of the firm *Harmon & Silsby*, *Silsby* not being present, and that the witness then took the note to the plaintiff who gave him a certain sum of money for it, and less than the face, but the precise sum he did not remember, which sum he paid to *Harmon*, after deducting his commissions for doing the business. He did not communicate to the plaintiff in what manner the names, "*Harmon & Silsby*" came upon the note. *Silsby* then offered to prove, that the note was made in pursuance of an agreement between the makers and payee for the purpose of raising money, which when obtained was to be divided between them for their individual purposes; but as no knowledge thereof was communicated to the plaintiff, the Judge rejected the evidence. He then offered the cash book and other books of the firm, to show that the money was never received by the firm, to which the plaintiff objected, and they were excluded by the Judge. *Silsby* contended, that the plaintiff was not entitled to recover, but the Judge ruled otherwise. The verdict was for the plaintiff, and *Silsby* excepted.

*Codman*, for *Silsby*, contended, that the indorsement of the partnership name by *Harmon* was a fraud upon *Silsby*, and void. Fraud vitiates all contracts. To charge both partners, the business must be done in the usual course of partnership transactions, which was not the case here. 15 *Mass. R.* 232; 14 *Mass. R.* 260; 5 *Greenl.* 295; 1 *East*, 48; 6 *Mass. R.* 245; 4 *Greenl.* 84. Selling notes is no part of the partnership business. This was a private note of *Harmon's*, and an indorsement on a note in the partnership name for the private debt of one is not binding. *Watson on Part.* 195; *Ld. Raym.* 176; 2 *Caines*, 246; 3 *Pick.* 495; *Com. on Con.* 488; 15 *Mass. R.* 75.

The evidence rejected should have been admitted, as part of the *res gesta*. 16 *Johns. R.* 34; 1 *Wend.* 529; 4 *Johns. R.* 251;

2 *Esp. R.* 526; 7 *East,* 212; 4 *Mass. R.* 270; 7 *Mass. R.* 58; 5 *Pick.* 11; *ibid.* 413; 6 *Pick.* 259; 19 *Johns. R.* 154. Enough appears to show this to have been an usurious transaction. *Com. on Con. 2d Amer. Ed.* 99, and cases cited; 12 *Johns. R.* 102; *Chitty on Con.* 73; 2 *Pick.* 285; 3 *Pick.* 5.

*W. Goodenow,* for the plaintiff, contended, that this was an ordinary partnership transaction, and binding on both the partners. The note belonged to the firm, as part of *Harmon's* stock put in, or such was the inference the plaintiff would naturally draw from an inspection of the paper, being entirely ignorant of the manner in which the indorsement was made. *Gow on Part.* 54.

But if the indorsement by one partner of the partnership name had been a fraud on the other, it would not affect the plaintiff's rights, as he knew nothing of it. *Gow,* 52, and cases there cited; *Bayley on Bills,* 52; 13 *Petersdorff's Ab.* 110; *Boardman* v. *Gore,* 15 *Mass. R.* 331. The case finds no facts on which to ground the defence of usury. It was a purchase in the market of a person, whose name was not upon the note, and without any previous knowledge by the plaintiff of its existence. No argument can be required to show, that the evidence offered was rightly rejected.

The opinion of the Court was drawn up by

WESTON C. J. — The note, although dated before the advertisement, announcing a partnership between the defendants, was indorsed after it was formed. It does not appear, that the broker knew for what purpose or for whom the money was raised, or that it was not wanted on account of the partnership, or to what uses it was applied. Besides, it is not in proof, that he was employed by the plaintiff to purchase the note. He was constituted the agent of *Harmon,* one of the defendants, to procure the note discounted, for which he received a commission.

The plaintiff purchased it, upon the credit of the makers and indorsers, without any intimation, or any reason to suspect, from any evidence in the case, that the name of the firm was not properly and fairly indorsed upon the note. If one of the firm has abused the confidence, reposed in him by his copartner, third persons, who receive the name of the firm, without notice of any fraud practised

or meditated, are not to be deprived of their security. The cases cited for the defendant show, that knowledge of such fraud must be carried home to him who receives the security, or the partnership is liable. *Arden* v. *Sharpe*, 2 *Esp.* 523 ; *Swan et al.* v. *Steele*, 7 *East*, 210.

The declarations of *Silsby*, one of the defendants, when notified of the dishonor of the note, the plaintiff not being present, were not legal evidence, and were properly excluded. The *res gesta* was the notice. What was said by the defendant, was in no proper sense a part of it ; although it might have been occasioned by it. To receive it, would be to make the declarations of a party evidence in his own favor. If *Harmon*, who received the money, misapplied it, or withheld it from the firm, it does not impair the plaintiff's right to recover, unless he was privy to such misapplication. Nor could his rights be affected by any agreement of which he had no notice, between the makers and *Harmon*, to divide the money between them, instead of applying it to the use of the firm.

The Judge was not requested by the counsel for the defendant to instruct the jury upon the point of usury, if it was a ground taken at the trial. He contended generally upon the evidence, that the plaintiff was not entitled to recover ; but the Judge instructed otherwise. If the note was tainted with usury, and the defendant was entitled to take advantage of the objection against the plaintiff, he would, by the *statute* of 1834, *c.* 122, be entitled to recover all but the excess. That the defendant might in that case have avoided, if he had pleaded or relied upon the statute, and claimed a special instruction upon this point. But this was not done, nor was the excess ascertained, by any evidence adduced in the case.

In our judgment, the ruling and directions of the Judge, who presided at the trial, were warranted by law.

*Exceptions overruled.*